# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| IGUANA, LLC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | 7:08-CV-141 (HL) |
| PATRIOT PERFORMANCE MATERIALS, INC., | : | |
| Defendant. | : | |

## ORDER

This matter is before the Court on motions to intervene (Docs. 37 and 34) filed by movants H. David Cobb, Federal Marketing Service Corporation, Montgomery Marketing, Inc., Paul E. Lanham, Charles W. Calkins, and Kilpatrick Stockton, LLP. (colletively referred to as "the Movants"). For the following reasons, the motions to intervene are denied.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Iguana, LLC ("Iguana") is in the business of manufacturing and supplying bednets. In January 2008, Iguana filed suit against the Movants claiming, among other things, tortious interference with its business relationships. Iguana's complaint asserts that the Movants published to Iguana's suppliers a letter which alleged that Iguana's production of bednets infringed a patent owned by Movant Paul E. Lanham. Iguana contends that after its suppliers received the infringement letter, the suppliers delayed producing bednet material and the delay caused Iguana to

miss its delivery dates specified in its contract with the United States military. Iguana seeks damages from the Movants for the losses it incurred, including lost profits, as a result of the production delays. The suit against the Movants (referred to in this order as "the business interference suit") is pending before Judge Clay Land, U.S. District Court for the Middle District of Georgia and is assigned case number 7:08-cv-9 (CDL).

In June 2008, Iguana filed a separate suit in this Court against one of its suppliers, Defendant Patriot Performance Materials, Inc. ("Patriot Performance") for breach of contract, replevin, enforcement of settlement agreement, and attorneys' fees. Patriot Performance then filed a counterclaim against Iguana claiming Iguana breached their contract. The disputes between the parties centered around Patriot Performance's alleged failure to deliver bednets according to the parties' contract. Iguana sought damages for the losses it incurred, including lost profits, as a result of the production delays. Patriot Performance sought damages caused by Iguana's alleged breach of contract.

In November 2009, Patriot Performance moved for summary judgment on Iguana's breach of contract claim as well as Patriot Performance's counterclaim. On September 15, 2010, the Court entered summary judgment in favor of Patriot Performance on Iguana's breach of contract claim and entered partial summary judgment in favor of Patriot Performance on its counterclaim. Summary judgment was granted to Patriot Performance because the record evidence showed that

Iguana caused the majority of the production delays by failing to give Patriot Performance the correct bednet pattern. Partial summary judgment was granted to to Patriot Performance on its counterclaim because the record evidence showed that Iguana was not justified in cancelling the parties' contract early. There was a jury question on Patriot's damages and the case was set down on the Court's calendar for trial.

Prior to the date of trial, Iguana and Patriot Performance entered into a settlement agreement. The settlement agreement was contingent upon the Court entering a final judgment drafted by the parties. The parties moved the Court to approve their proposed final judgment. On October 13, 2010, the Court granted the request and entered a final judgment containing the following relevant language:

(1) That the parties "announced that they had amicably resolved their differences, subject to the entry of the following Final Judgment, to which each party has consented."

(2) "All claims and defenses which were made or could have been made in the civil action, including those set forth in the Verified Complaint and in the Answer and Counterclaim of Patriot, except as specifically set forth herein, are hereby dismissed with prejudice."

(3) "Each party waives all right to appeal from this Judgment which shall replace any other judgment in this action."

(4) "The Clerk of the Superior Court of Thomas County is hereby ordered to release the "cash bond" (in the amount of $64,000) being held in the registry of that Court to Dale S. Davidson, Esq."

The day after the Court entered the final judgment, the Movants filed their motions to intervene for the purpose of amending the final judgment. The Movants

ask the Court to remove the portion of the final judgment stating that the judgment "shall replace any other judgment in this action." The summary judgment order must remain in effect, the Movants contend, because they wish to assert a collateral estoppel defense in their business interference suit before Judge Land. The defense is that Iguana is estopped from arguing that the Movants caused production delays because this Court's summary judgment order found that Iguana caused the majority of the production delays.

Patriot Performance and Iguana oppose the motions to intervene.

## II. DISCUSSION

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention as of right and permissive intervention. The Movants do not contend that they are entitled to intervene as of right; instead, they ask for the Court's permission to intervene.

### A. Standard for Permissive Intervention

Permissive intervention is granted in cases where the movant has timely filed its motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Permissive intervention only "require[s] an interest sufficient to support a legal claim or defense." Laube v. Campbell, 215 F.R.D. 655, 659 (N.D. Ala. 2003) (quoting Diamond v. Charles, 476 U.S. 54, 77, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)). Permissive intervention if there is no right to intervene is "wholly discretionary" and even if the requirements of

4

permissive intervention are satisfied, "the court may refuse to allow intervention." Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508, 1513 (11th Cir. 1996) (citations omitted). In deciding whether to allow permissive intervention, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### B. The Parties' Arguments

The Movants advance five arguments in support of their motion for permissive intervention: (1) there are common factual issues in the Movants' and Patriot Performance's defenses, mainly whether Iguana caused the bednet production delay; (2) the Movants moved to intervene as soon as the need to intervene became apparent, which was the date the Court entered the final judgment and put into question whether the summary judgment order was in effect; (3) Patriot Performance and Iguana would suffer no legal prejudice if intervention was allowed and the final judgment was amended because relitigation in their case would not occur; (4) the Movants suggest that Patriot Performance and Iguana cannot claim prejudice because they did not take the proper steps as specified in Federal Rules 59 or 60 to vacate or amend the summary judgment order; and (5) the Movants would suffer prejudice if intervention was denied because they would be forced to engage in litigation over issues that had been decided by this Court in its summary judgment order.

In opposing permissive intervention, Patriot Performance and Iguana

5

principally argue that they would be prejudiced if the final judgment was altered. They express that their settlement was contingent on the final judgment replacing any other orders issued in the case. They assert that they have no remedy to challenge any change to the final judgment since the final judgment specifies that no appeals shall be taken.

C. **Whether the Court Will Permit Intervention**

The commonality element for permissive intervention is satisfied. The Movants assert in their business interference suit a defense that shares a common issue of fact with Patriot Performance's defense, which is whether Iguana caused bednet production delays. The second requirement for permissive intervention is that the motion to intervene must be timely. The Court is persuaded that the motion to intervene is timely. The Movants filed their motion as soon as it became apparent that the summary judgment order in this case may not be available to them to use in asserting the collateral estoppel defense.

Even though the requirements of intervention have been met, the Court must deny the Movants' motion to intervene. This decision is discretionary and the prejudice to the original parties substantially affects how the Court will exercise its discretion. Here, the Court believes that Iguana and Patriot Performance would suffer prejudice if permissive intervention was allowed and that the prejudice outweighs the Movants' interest in intervening.

Apparent to the Court is that intervention and amendment to the final judgment

would cause Patriot Performance and Iguana to move to undo their settlement and either make the final judgment appealable or proceed to trial on the issues of damages. Invalidating the settlement agreement would create havoc amongst Patriot Performance and Iguana since the parties have taken action pursuant to their settlement agreement and have caused funds held in a bond in Superior Court to be released.

Additionally, Iguana and Patriot Performance's failure to move to amend or vacate the summary judgment order pursuant to Federal Rules of Civil Procedure Rules 59 or 60 does not mean that they will not be prejudiced by permissive intervention and a subsequent amendment to the final judgment   Their failure to amend or vacate the summary judgment pursuant to the Federal Rules is indicative of unskilled lawyering. As has already been explained, it is apparent that if the final judgment was amended the parties would undue their settlement and seek to appeal the summary judgment order or try the case. These consequences constitute prejudice to Patriot Performance and Iguana.

Also weighing against intervention is that intervention would undoubtably fuel the filing of additional motions and perhaps lead to a trial in this case. Judicial resources would be doubly taxed as this case would reopen and the business interference suit would proceed.

As for the argument that the Movants will have no way of preserving the findings of the Court's summary judgment order and will suffer additional costs if

forced to litigate the same issues litigated by the parties in the breach of contract suit, there is nothing entitling the Movants as a matter of right to the collateral estoppel defense. Moreover, the Movants will have their day in Court and no rights to litigate their case will be taken from them if they are not permitted to intervene. Additionally, the Movants may argue in the business interference suit before Judge Land that the failure of Patriot Performance and Iguana to vacate or amend the summary judgment order pursuant to Rule 59 or 60 allows the Movants to assert a collateral estoppel defense.

Accordingly, the motions to intervene (Docs. 37 and 34) are denied. This case remains closed.

**SO ORDERED**, this the 15th day of March, 2011.

                                        *s/ Hugh Lawson*
                                        **HUGH LAWSON, SENIOR JUDGE**

lmc